## Evans *et al. versus* Bidwell *et al.*

1. Kemp, in 1825, entered on a warranted tract as vacant, made improvements and retained possession; in 1839, Stewart obtained a patent and rraudulently induced Kemp to accept a lease at a nominal rent; Kemp held possession for thirty years more, claiming to own the land, no rent being demanded and he paying none, Stewart having in the meantime admitted that Kemp owned the land. Stewart sold the land; under the circumstances it was incumbent on the purchaser to make inquiry as to Kemp's title.

2. The rule, that one holding under a lease shall not dispute his lessor's title, does not apply where one having no title, by trick or artifice induces another in possession to take a lease.

3. Ordinarily producing to a vendee a lease to one who has possession of the land, determines how he holds it; inquiry of him by the vendee of the lessor for secret frauds or equities is not necessary; the presumption is that he holds under the landlord's title and according to the lease.

4. If the lessor had title, although inchoate or defective at the execution of the lease; inquiry by a bonâ fide purchaser would not be a duty.

5. The facts as alleged in this case sufficient to put a purchaser from the lessor upon inquiry as to the lessee's title and were for the jury.

November 17th 1874. Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Fayette county:* Of October and November Term 1874, No. 156.

This was an ejectment, brought July 27th 1870, by De Witt C. Bidwell, James Millinger and the heirs of James R. Hendrickson, deceased, against Susan Evans and others, for a tract of 306 acres of land in Stewart township. The defendants were the widow and heirs of James Kemp, deceased.

The case was tried April 29th 1874.

The plaintiffs gave in evidence, patent February 2d 1839, to Andrew Stewart, on warrant to Reader, dated 1796; deed from Stewart, dated December 15th 1854, to Hendrickson, Sterling, Curry and Larimer, recorded July 8th 1867; deed June 6th 1865, from Sterling's executors to James Millinger, for an undivided half, &c.; deed December 12th 1866, from Millinger to Bidwell, for an undivided fourth; deed Mellon assignee of Larimer, to Gearing, dated February 5th 1867; deed Gearing to Bidwell, dated April 20th 1870; deed Curry to Millinger, dated March 15th 1856; will of Hendrickson, proved May 8th 1869.

Stewart testified that he bought the Reader warrant in 1824, and bought several tax titles for the same tract. In 1839 he with others went to run the lines of the tract, and came to James Kemp's house, which was on the tract; Kemp went with them and said he had settled there, thinking the land was vacant; Kemp wanted a lease, he came to Uniontown on the 25th of January 1840; and witness gave him a lease for 396 acres and allowance for one year, from April 1st 1840, for taxes, repairs and one dollar rent; he remained in possession under the lease, until witness sold the land

26 P. F. SMITH—32

[Evans *v.* Bidwell.]

to Larimer and others, to whom he gave the leases; Kemp never claimed the land as his own; he built a barn there, thinking it vacant land. Witness never asked him for rent, and he never paid any.

W. Shipley testified that Kemp had lived on the tract thirty-eight or forty years and died on it, four or five years before the trial.

For defendants, J. Lindeman testified that Kemp went on the land forty-eight years before and lived there till he died; he made improvements, cleared some of it and raised a family on it, built a house and a sort of a barn; his widow and family continued there. Kemp farmed the land as his own before 1840; he put the house up and did the clearing before that time.

Susan Evans, the widow of Kemp, testified that they had lived on the land forty-nine years; they went on to the place as vacant land; Kemp was in peaceable possession for many years, paid the taxes, and she paid them after his death. She knew of the lease; Stewart came to their house afterwards. She said, " Mr. Stewart, I understand you have been trying to sell my house." He said, " No madam; I had thought, if you and Mr. Kemp would agree, I would trade you another piece of land for this, and if you are not agreed, it is all right."

G. F. Cook testified that he had lived on a tract of Stewart's adjoining the Kemp tract; that in 1851, needing timber for fences, and supposing that Stewart owned that tract, he proposed to get timber from it, and spoke to Stewart about it; he said the property Kemp lived on was not his. Witness then spoke to Stewart about Kemp accepting a lease from him. Witness further testified:—
" He then gave me a short account of this affair between him and Kemp; he stated there was some debt against Mr. Kemp, against this property for which the property was about being sold, and he said he advised Kemp to give him this lease and save the sale of the property. He made this remark: ' It was not a bonâ fide lease;' he said, ' Sir, I have no more right to give you a rail tree of that timber than I have to give you one off James Morrison's land.' He sent me to Kemp, and told me if he would sell me what would repair the fences at twenty-five cents a tree, to get it and he would pay for it. I went to Kemp to get the timber and he refused to let me have it at that price; I then wrote a letter to Stewart, stating that I had failed to get the timber at that price, and he wrote me a letter to repair the fences till he could come up and see Kemp himself. He came up the latter part of the same summer; I was not at home, but met him at Mr. Kemp's; he said, ' I can't agree with Mr. Kemp about this timber;' about this time Mrs. Kemp came out and introduced the subject of this lease and a deed she claimed Stewart promised to make them; said she, ' I have sometimes thought that you would take advantage of that lease Jim gave to you, and sell the property

[Evans v. Bidwell.]

from us, and that you would not make us the deed as you have heretofore agreed.' Stewart said to her, 'I never intended to take any advantage of you or your husband in this property; I intend to make you a deed for it, as I told Mr. Cook when he was over last spring, and I will make it and send it up to James next week.' I have frequently talked with Kemp; he claimed to have come there in a very early day; set upon it when it was vacant land; he worked and labored, built a house, set out trees, and did generally what a man would do on a little farm."

Lemuel D. Kemp, son of James Kemp, testified: * * * "Father claimed this place by possession, and used it as his own. Heard a conversation about this lease. It might have been eighteen years ago. My mother and father and Mr. Stewart were there; this lease came up, and my mother said to Stewart 'she understood that he was going to try to cheat them out of the property;' he said: 'not at all Mrs. Kemp,' he said he did not claim it."

The defendants gave in evidence the record of a judgment to December Term 1839, Miller against Kemp; fi. fa. to the same term; levy on the land in dispute; inquisition June 24th January 1840 and land extended.

The plaintiffs submitted the following points, which were affirmed:

1. If the lease of James Kemp, of January 25th 1840, offered in evidence by plaintiffs and admitted by the defendants, to have been executed by James Kemp, under whom they claim, was handed over (if the jury believe the evidence of Andrew Stewart in his deposition) to the purchasers of the John Reader tract, at the time when he (Stewart) executed the deed for it, relieved those purchasers from the necessity of going to the land to inquire concerning the title, and estops James Kemp and those claiming under him from alleging anything contrary to the terms of that lease, which was not made known to those purchasers before the said purchase from Stewart.

2. The deed of Andrew Stewart to James R. Hendrickson, Mark Sterling, William B. Curry and William Larimer, Jr., for the John Reader tract, being the land in dispute, dated the 15th day of December 1854, passed a perfect title to the said land, unless Hendrickson, Sterling, Curry and Larimer, the grantees of the said land, had actual notice of the fraud alleged by the defendants in connection with the lease of January 25th 1840, before the purchase by them of the said land.

3. Each subsequent purchase of any interest in the said land in dispute by a bonâ fide purchaser for value, without actual notice of said alleged fraud, conveyed to such purchaser a perfect title to such interest in said land.

4. If the evidence offered by the defendants shall be believed throughout, there is no evidence in this case showing actual know-

[Evans *v.* Bidwell.]

ledge of any fraud by any of the plaintiffs before the times of their respective purchases, and therefore the verdict must be for the plaintiffs.

The defendants' points and answers were :—

1. By the plaintiffs' admission, the defendants have a good title to the land in dispute, unless they are estopped from setting up the same by the alleged lease from Andrew Stewart to Kemp, of the 25th of January 1840.

Answer : " This is a fact as you heard the same stated, in open court, before you."

2. If said lease was made, not for the purpose of creating the relation of landlord and tenant, but for some other purpose, it cannot operate to estop the defendants from setting up title against the lessor or those claiming under him.

This point was refused.

3. Said lease will not estop the defendants from setting up title against the lessor or those claiming under him, unless possession was obtained and taken under the lease.

Answered in general charge that plaintiff under the evidence is entitled to recover.

4. If James Kemp was in possession of the land at the time of the making of said lease, claiming it as his own, and had cleared a part of it and made improvements thereon, and if Stewart had no title to said land, the jury will be justified in concluding that Kemp was induced to take said lease by deception, fraud, misrepresentation or ignorance of his right; and if so, he and those claiming under him will not be estopped from setting up title against the lessor.

This point was refused.

5. The possession of the land in dispute by the defendants, at the time of the sale by Stewart, was notice to his vendees of title in the defendants; and they were and are at liberty to set up any manner of title, and any kind of defence to any claim which Stewart or his vendees might set up.

Answer : " Our instruction that the plaintiffs are entitled to recover under the evidence in the case, sufficiently answers all the foregoing points."

The verdict was for the plaintiffs.

The defendants took a writ of error. They assigned for error :—

1–4. The answers to the plaintiffs' points.

5–9. The answers to the defendants' points.

10. Instructing the jury to find a verdict for the plaintiffs.

*D. Kaine* (with whom was *C. E. Boyle*), for plaintiffs in error.— The purchaser of land in possession of tenants is chargeable with notice of their interest, for he is bound to inform himself of the

[Evans v. Bidwell.]

condition of the lease: Hood v. Fahnestock, 1 Barr 474; Jacques v. Weeks, 7 Watts 276; Woods v. Farmere, Id. 384; Maul v. Rider, 9 P. F. Smith 167; 4 Kent's Com. 179.

*Campbell* and *Howell*, for defendants in error, cited Leach v. Ansbacher, 5 P. F. Smith 85.

Mr. Justice GORDON delivered the opinion of the court, January 4th 1875.

The court should have permitted the jury to pass upon the evidence as presented by the parties to this action. According to the allegations of the defendants, they and their ancestor, James Kemp, had the undisputed possession of the premises in dispute from the year 1825 down to the bringing of this suit. Some fourteen years after Kemp's settlement upon the land, the lease in question was obtained from him by Stewart, without consideration and through a fraud practised upon him under the garb of friendship. For thirty years after its date Kemp and his family were permitted to remain in undisturbed possession, under claim of adverse right, and without payment of any rent whatever. So, according to the testimony of G. F. Cook, Stewart told him in 1851, that the lease was not bonâ fide, and that he had no title to the land. If indeed the jury should believe this testimony, we see no reason why the defendants should not have their verdict. It is said the tenant may not dispute his landlord's title. This is so; and if the jury should believe the evidence of Andrew Stewart, that the lease was taken in good faith, he then being the owner of the land, this rule would apply. In such case the defendants have no title; their defence is a fraud, and they should receive no consideration. But where one having no title, by trick or artifice, induces one who is in the possession of land to take a lease from him, the rule is different. In such case the lease is a mere *nudum pactum*, and avails the lessor nothing.

The question of the effect of the exhibition of this lease upon the title of the plaintiffs, who are vendees of Stewart, is also for the jury. Ordinarily the production of a lease from one who has the possession of land, will settle the question of how he holds. Inquiry of him, by a bonâ fide vendee of the lessor, for secret frauds or equities, is not necessary, for it is presumed that he holds under the landlord's title and according to the terms of his lease. But should it appear that the lessor had no title other than the tenant's possession; that the lease was taken many years after the occupancy was begun; that it still continued years after the lease had expired, and that no rent had ever been paid, especially when these things are connected with the circumstance of a hostile claim of nearly thirty years' standing, there is certainly enough in the case to put a prudent man upon inquiry. Inquiry thus becoming

[Evans *v.* Bidwell.]

a duty, the buyer who neglects it buys at his own risk. On the other hand, if the landlord had title, though inchoate or defective at the time of the execution of the lease, inquiry, upon part of a bonâ fide purchaser for value, would not be a duty. In that case he would take the title free from the secret equities of the tenant, of which he had no actual notice.

The judgment is reversed, and a *venire facias de novo* is awarded.